892 F.2d 79
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS, LOCAL UNION 89,
Plaintiff-Appellee,
v.
MOOG LOUISVILLE WAREHOUSE, INC., Defendant-Appellant.
 No. 89-5518.
 United States Court of Appeals, Sixth Circuit.
 Dec. 18, 1989.
 
 Before NATHANIEL R. JONES and MILBURN, Circuit Judges and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Moog Louisville Warehouse, Inc. ("Moog") appeals summary judgment in favor of plaintiff-appellee General Drivers, Warehousemen and Helpers, Local Union 89 ("General Drivers") requiring Moog to submit a labor dispute to arbitration. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 General Drivers brought this action in federal district court under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), to force Moog to submit a grievance to arbitration pursuant to a collective bargaining agreement between the parties. Moog refused to arbitrate on the grounds that General Drivers' request for arbitration was not timely. On April 9, 1987, the district court entered judgment on the pleadings holding that the timeliness of a demand for arbitration was itself a matter for arbitration. Moog appealed, and we reversed and remanded stating: "We believe that the contractual language in this case clearly indicates that the particular grievance in dispute is excluded from arbitration unless the court first finds that the union met the conditions precedent to arbitration." Local Union 89 v. Moog Louisville Warehouse, Inc., 852 F.2d 871, 875 (6th Cir.1988).
 
 
 3
 On remand, General Drivers moved for summary judgment. The district court found that the Union had met the conditions precedent to arbitration, and it granted General Drivers' motion for summary judgment. This timely appeal followed.
 
 B.
 
 4
 On June 25, 1986, Moog discharged an employee named Bill Hask, a member of General Drivers. On June 26, 1986, Hask filed a grievance. The same day, Moog purported to deny the grievance with a letter to General Drivers' representative, Larry Moxley.
 
 
 5
 On July 1, 1986, Moxley spoke by telephone with Larry Washbish, President of Moog. "Washbish and Moxley unsuccessfully attempt[ed] informal settlement of [the] grievance...." Appellant's Brief at 2. Washbish told Moxley that he would not change his position on Hask's discharge, and Moxley indicated that he intended to take the case to arbitration. Moxley and Washbish scheduled a meeting for July 5, 1986, which Moxley postponed until July 9, 1986.
 
 
 6
 When Moxley and Washbish met on July 9, Washbish refused to change his position. On July 18, 1986, Washbish wrote Moxley informing him that General Drivers had failed to demand arbitration within fifteen days of Moog's written denial of the grievance dated June 26, 1986; therefore, Moog considered the matter closed under the terms of the bargaining agreement. Four days later, July 22, 1986, General Drivers made a formal demand for arbitration.
 
 
 7
 The collective bargaining agreement provides that "[g]rievances with respect to ... discharge of employees shall be instituted at Step (b) of the grievance procedure." Step (b) of the grievance procedure provides, in pertinent part:
 
 
 8
 [A] grievance ... shall, within five (5) working days, be reduced to writing, and presented to the Company. An officer or other official of the Company ... and a Business Representative or officer of the Union ... shall, within five (5) working days, attempt to settle the grievance, and the Company shall thereafter, within five (5) working days, give the Union its answer to said grievance in writing. (Emphasis added)
 
 
 9
 Step (c) of the agreement governs requests for arbitration with the following language:
 
 
 10
 Step (c)--If the grievance is not then satisfactorily settled and if the grievance is otherwise arbitrable under this Agreement, it may be referred to arbitration ... provided, however, that if the Union fails to notify the Company in writing by registered or certified United States Mail within 15 calendar days after the Company gives its answer in writing to a grievance at Step (b) of the grievance procedure, above, then the Union shall be conclusively presumed to have accepted the Company's answer thereto and said grievance shall not thereafter be arbitrable. (Emphasis added)
 
 
 11
 The issue before us is whether the district court erred in finding that as a matter of law General Drivers made a timely demand for arbitration under the terms of the bargaining agreement.
 
 II.
 A.
 
 12
 A district court's grant of summary judgment is reviewed de novo. Pinney Dock & Transport Co. v. Pennsylvania Central Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 109 S.Ct. 196 (1988). The interpretation of a collective bargaining agreement is also freely reviewable, being a question of law. Policy v. Powell Pressed Steel Co., 770 F.2d 609, 612 (6th Cir.1985), cert. denied, 475 U.S. 1017 (1986). We apply traditional rules of contract interpretation insofar as their application is consistent with federal labor policies. UAW v. Yard-Man, Inc., 716 F.2d 1476, 1479 (6th Cir.1983), cert. denied, 465 U.S. 1007 (1984). "This is not to say that the collective bargaining agreement should be construed to affirmatively promote any particular policy but rather that the interpretation rendered not denigrate or contradict basic principles of federal labor law." Id. at 1480.
 
 B.
 
 13
 The agreement between Moog and General Drivers imposed, as a condition precedent to arbitration, a duty upon General Drivers to give written notice of intent to arbitrate within fifteen days of receipt of an "answer in writing to a grievance at Step (b) of the grievance procedure." The district court found that "the Union ha[d], to the best of its ability, met the conditions precedent to arbitration."
 
 
 14
 The district court began its analysis by noting that it should seek to advance national labor policy when construing collective bargaining agreements and that federal labor policy generally requires that individuals seeking relief under labor contracts exhaust any grievance procedure provided in the contract. The district court then stated:
 
 
 15
 In the case before this Court, an employee and the Union attempted to use the grievance procedure only to have that attempt frustrated by the actions of the company.
 
 
 16
 It seems to the Court that principles of estoppel, waiver and, indeed, fair play dictate that the company may not disregard the plain language of the collective bargaining agreement as it relates to the procedure outlined in Step (b) and then unilaterally treat the Union arbitration demand filed within 15 days of the July 18 letter as untimely.
 
 
 17
 The Court therefore treats the June 26 letter from Washbish as a nullity, the July 1 agreement to meet with the Union representatives on July 9 as a waiver of the 5-day limit for an attempt to settle the grievance informally, and the July 18 letter as the date from which the 15-day period for demand for arbitration is to be calculated.
 
 
 18
 Moog argues that the district court improperly looked to federal labor policy and improperly invoked equitable principles because of a mistaken finding that Moog had misled General Drivers. The word "misled" does not appear in the district court's opinion, and Moog cites no authority to support the proposition that equitable principles cannot be considered in labor contracts.[1] General Drivers argues that the contract language is clear, and clearly supports the district court's ruling.
 
 
 19
 Moog concedes that under the agreement there are "two conditions precedent to a request for arbitration: (1) the parties must attempt to settle the grievance, and (2) the Company must answer the grievance in writing." Appellant's Brief at 5. Relying upon the language of Step (b), General Drivers argues that the "answer in writing ... at Step (b)" is only effective to trigger the fifteen-day limitation in Step (c) if it is preceded by an attempt to settle. Moog admits that its letter of June 26 preceded any attempt to settle but argues that the denial was nonetheless effective.
 
 
 20
 The beginning point in the interpretation of a collective bargaining agreement is with the explicit language of the agreement. UAW v. Yard-Man, Inc., 716 F.2d 1476, 1479 (6th Cir.1983), cert. denied, 465 U.S. 1007 (1984). In the collective bargaining agreement between Moog and General Drivers, the grievance procedure begins at Step (b) of the agreement when the employee presents a written grievance to the company. Next, "[a]n officer or other official of the Company ... and a Business Representative or officer of the Union ... shall, within five (5) working days, attempt to settle the grievance...." "[T]he Company shall thereafter, within five (5) working days, give the Union its answer to said grievance in writing." The plain language of Step (b) contemplates the following progression: first, a written grievance; second, a settlement meeting; and third, a written response from the company to the union.
 
 
 21
 A second rule of interpretation requires the court to interpret each provision of an agreement as part of an integrated whole. Id. at 1480. The grievance procedure as set forth in this agreement indicates that the parties' intent was to set out a logical, escalating procedure for processing a dispute. Step (a) (except in cases of layoff and discharge) requires an employee to go to his immediate supervisor. Step (b) provides for a formal grievance, negotiation, and response. Step (c) then allows escalation of the dispute to arbitration. As part of an integrated step-by-step escalation and appeal process, Step (b) would require first a written grievance, next an attempted settlement, and next written denial by the company.
 
 
 22
 Also, the terms of an agreement should be construed so as to render none nugatory and avoid illusory promises. Id. To read this agreement as barring arbitration despite Moog's failure to attempt to settle before denying the grievance would render nugatory language in both Steps (b) and (c); viz., "[The parties shall attempt to settle] and the Company shall thereafter, within 5 working days, give the Union its answer in writing;" and, "If the grievance is not then satisfactorily settled ... it may be referred to arbitration...." (Emphasis added). Such a reading would also render illusory the company's promise to attempt to settle.
 
 
 23
 "Finally, the court should review the interpretation ultimately derived from its examination of the language, context and other indicia of intent for consistency with federal labor policy." Id. As recognized by the district court, federal labor policy "requires that individuals wishing to assert contract grievances ... attempt use of the contract grievance procedure agreed upon by an employer and union as the mode of redress." As the district court noted, to interpret Step (b) of the agreement as Moog proposes is to frustrate an employee's attempt to use the grievance procedure. An interpretation which requires the company to negotiate before denying a grievance will encourage employees to follow the grievance procedure.
 
 C.
 
 24
 Traditional contract interpretation principles and federal labor policy both support interpreting Step (b) of the grievance procedure to require that Moog attempt to settle any grievance before denying that grievance. The only written notice of denial Moog gave to General Drivers was by letters dated June 26 and July 18, 1986. We hold that the letter of June 26, 1986, could not have been an effective denial under Step (b) because it preceded any attempt to settle. Thus, the July 18, 1986, letter was the only correspondence from Moog which could have triggered the fifteen-day limitation period. On July 22, 1986, General Drivers gave written notice of intent to arbitrate. Therefore, we hold that General Drivers' notice was timely.
 
 III.
 
 25
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 In fact, it is clear that equitable principles can be considered under federal law governing labor disputes. See, e.g., Vaca v. Sipes, 386 U.S. 171, 185, 87 S.Ct. 903, 914 (1967) (employer whose actions amount to repudiation of the bargaining agreement is estopped to raise lack of exhaustion)